UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re TARGET CORPORATION
SECURITIES LITIGATION

THIS ORDER RELATES TO:   Master File No. 16-cv-1315 (JNE/BRT)
All Actions              ORDER

    Investors like Carpenters' Pension Fund of Illinois sued Target Corporation and its former officers (collectively, "Target") over Target's public Statements.  *E.g.*, Proposed Am. Compl. 2d (simply, "Compl.") ¶¶ 141, 224 (accusing May 30, 2013 Statement), Dkt. No. 105-1.  In making those Statements, Target allegedly defrauded the securities markets.  Compl. ¶¶ 294-296.  Considering the proposed allegations, the Court denies reconsideration of this lawsuit's dismissal.  *See* Mot., Dkt. No. 105.  Carpenters' Pension has not plausibly pled that the accused Statements meet the materiality standard for securities fraud.

    The Court summarizes this lawsuit's context.  There are nearly 1,800 Target stores in the United States.  Between March and December 2013, Target opened over a hundred more, this time throughout Canada's ten provinces.  For those Canadian stores, which were incorporated under Target's Canadian business, Target's inventory-management technology allegedly caused overbuys and shortages in on-sale consumer goods.  In January 2015, Target's Canadian business filed for bankruptcy.  Along the way, Target allegedly defrauded the securities markets by making public Statements that omitted facts about its inventory-management technology.

    For securities fraud, a material statement involves "a substantial likelihood that the

1

disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Detroit Gen. Ret. Sys. v. Medtronic, Inc.*, 621 F.3d 800, 805-07 (8th Cir. 2010) (affirming dismissal of securities-fraud lawsuit). To decide plausible materiality, a court "may consider . . . materials embraced by the pleadings and . . . the public record." *Id.* at 805.

Soft to begin with, the accused Statements cannot be material to the alleged securities fraud. Soft language couches the Statements. *See id.* at 806 (dismissing securities-fraud lawsuit when accused statement "couches the information . . . as preliminary, and . . . 'suggests.' . . ."). Even if Target misleadingly omitted the technological root of its Canadian business's problems, those problems were disclosed (figure, below). "It is difficult to see how . . . disclosing a possible problem . . . [is] materially misleading." *Id.* Target disclosed its Canadian business's inventory, brand and financial problems. The media confirmed those problems and, within months, disclosed their technological root. Earlier disclosure of that technological root could not have been viewed by the reasonable investor as having significantly altered the total mix of available information. The Court analyzes the accused Statements in detail below.



**March 20, 2013 Statements**

Target's Annual Report for fiscal year 2012 could not have been material to the alleged securities fraud. *See* Compl. ¶ 196. No stores had opened in Canada during that

year.  *See* Compl. ¶ 110.   And Target disclosed its problems.  It disclosed that, for that year, its Canadian business lost $315 million.  Target Corp., 2012 Annual Rpt. 22 (Form 10-K) (March 20, 2013), Dkt. No. 72-2.  Target's Canadian loss was about 10% of its U.S. net earnings.  *See id.*  Target further warned that "Our 2013 entry into the Canadian retail market is our first retail store expansion outside of the United States."  *Id.* at 9.  Even if incipient technological issues caused Target to stagger its Canadian stores' openings, Compl. ¶ 196, that staggering publically manifested.  *See* Mark Wiltamuth, et al., *Target Corp.: Canada on Track; Mgmt Presentation on Rollout and Store Visit Notes*, Morgan Stanley Res.  N. Am. 3 (March 27, 2013) ("Concern over system startup issues (either technology, . . . inventory) drove the staggered opening. . . ."), Dkt. No. 73 (Ex. 6).  Target disclosed its then-incipient Canadian problems.

**March 28, 2013 Statements**

Shortly after Target's 2012 loss and other Canadian problems came out, one of Target's then-officers described his optimism about the Canadian business.  Compl. ¶ 200 ("We're right where we want to be right now. . . . expect[ing] . . . next year to be profitable for the full year.").  He tempered, "for Canada, . . . . we certainly have our hands full right now."  Interview by Perry Caicco with John Mulligan, CFO, Target Corp, in Toronto, Ont. 11 (March 28, 2013), Dkt. No. 73 (Ex. 3).  And he confirmed that Target lost "hundreds of millions of dollars of capital" to "depreciation" in distribution infrastructure.  *Id.* at 3.

Third-party analysts tempered their optimism, too.  Mark Wiltamuth, et al. 3 (noting "uncertainty for Target shareholders" and that "[that officer] gave scant details

over sales performance"), Dkt. No. 73 (Ex. 6); Jason DeRise & Mark Carden, *Target Corp.: All eyes on Canada*, UBS Investment Res. (Apr. 15, 2013) ("We think the expansion is risky as [Target] has little time to test its Canadian format."), Dkt. No. 73 (Ex. 7). They described the Canadian stores as "sparse with inventory." David Strasser, et al., *Seeing TGT Canada Stores First Hand*, Janney Capital Markets 2 (March 27, 2013), Dkt. No. 73 (Ex. 4); *see* Christopher Horvers, et al., *Hardlines Retail: Target*, J.P. Morgan: N. Am. Equity Res. fig.2, 5 (Apr. 15, 2013), Dkt. No. 73 (Ex. 5). The securities markets had likewise "double penalized [Target] for its Canada startup" by discounting Target's stock price. *See* Wiltamuth, et al. 2.

Soft to begin with, the March 28, 2013 Statements cannot be material to the alleged securities fraud. The Statements contradict Target's allegedly misleading optimism. Target noted that it had its hands full. It mentioned the Canadian business's prospective risk, quarterly loss and distribution problems. Third-party analysts echoed the Canadian business's risk and viewed Target's optimism as content-free—as did the securities markets. Those analysts even disclosed that, inside the Canadian stores, customers saw empty shelves. Target's Canadian problems were thus disclosed.

**May 22, 2013 Statements**

Target disclosed a quarterly loss of $205 million on its Canadian stores. Target Corp., Quarterly Rpt. 19 (Form 10-Q) (May 22, 2013), Dkt. No. 73 (Ex. 9). Responding to this loss, a then-officer praised Target's technology for "accommodat[ing] the increasing volume of traffic." Compl. ¶ 205. He "fe[lt] very confident" that the Canadian business had put supply chains "in place" and was "refining" them. Compl.

¶ 207. Another then-officer predicted that "by the fourth quarter we expect our Canadian operations will be slightly accretive." Compl. ¶ 209. But a day earlier, a survey published that, in Canada, Target's brand had decayed. Faye Landes & Tal Lev, *Target Canada - The First Inning*, Cowen & Co. Broadlines 2 (May 21, 2013) (finding "responses to our survey are less positive than to our pre-opening survey"), Dkt. No. 74 (Ex. 10).

The soft May 22, 2013 Statements could not have been material to the alleged securities fraud. Couched in softening language, those Statements are closer to feeling than fact. One then-officer spoke about his feelings. Though mentioning a deadline, another then-officer predicted only slight accretion—accretion being less than growth. Besides, the Canadian business's quarterly loss and its brand decay were disclosed.

**May 30, 2013 Statements**

At a conference, one of Target's then-officers warned investors about the Canadian expansion's ongoing problems. He noted that the Canadian stores needed "tuning" and that "they take a while to tune." Compl. ¶ 214. He also said that "a wave of system enhancements . . . need to come," and that "each one of the stores will be different" as to tuning and enhancement. *Id.* He—allegedly falsely—implied that inventory problems were due to "overwhelm[ing]" demand. Compl. ¶ 212. He "expect[ed] . . . in the fourth quarter . . . we turn to accretion and then that will grow [as returns] naturally improve." Compl. ¶ 216. Analysts confirmed that "supply chain . . . presented greater than expected logistical challenges." Christopher Horvers, et al., *Target Corporation: Management Meeting Highlights; In-line Is Fine As Long As*

5

*Canada Is Intact*, J.P. Morgan N. Am. Equity Res. (June 3, 2013), Dkt. No. 74 (Ex. 12). "Investor sentiment ha[d] turned negative" on those ongoing problems. Horvers 1.

Target's May 30, 2013 Statements cannot be material to the alleged securities fraud. Disclosing problems, Target noted that each store needed a unique wave of enhancements and tuning, which, as disclosed, takes a while. Although Target allegedly misattributed its problems' root to demand, analysts confirmed those problems and the securities markets soured.

**August 21, 2013 Statements**

Target's stock fell about 4% when Target disclosed another quarterly loss on its Canadian business, this time at $169 million. Compl. ¶¶ 219, 227. Responding, Target's then-CEO told analysts that Target faced "continuing challenges" in Canada. Conference Call with Gregg Steinhafel et al., Target Corp. 2 (Aug. 21, 2013), Dkt. No. 75 (Ex. 17). He disclosed that, for its Canadian business, Target had "buil[t] a completely new supply chain infrastructure and integrated technology solution." Compl. ¶ 220. That technology needed a "tremendous amount of fine tuning," for which Targets "continues to refine." Compl. ¶¶ 222, 224. Although, according to that former officer, this tuning was like what Target had experienced in the United States, he noted that, without this tuning, the Canadian business would continue to suffer "inventory overhang . . . primarily in . . . seasonal categories." Compl. ¶ 224. Despite these problems, the then-CEO praised Target's execution as "excellent" and he "remain[ed] highly confident." Compl. ¶ 220. Another then-officer echoed that Target needed to make "tweaks," during an interview with a newspaper that had called out Target for the Canadian business's inventory

shortages.  Compl. ¶¶ 228, 330.

Even before those Statements, though, the media had published the Canadian business's inventory and brand problems.  Marina Strauss, *Target's Canadian effort receives a poor grade from shoppers*, The Globe & Mail (Aug. 19, 2013) ("Shoppers complain that its stores have been short on inventory. . . ."), Dkt. No. 74 (Ex. 13); Sean P. Naughton, et al., *Target Corp.: Q2 Earnings Preview*, PiperJaffray Company Note (Aug. 19, 2013) ("Canadian press is reporting a deceleration in customer satisfaction over the last four months, which we believe is likely the result of entirely new supply chain infrastructure. . . ."), Dkt. No. 74 (Ex. 14).  On these problems, an analyst "note[d] increased risk for potential earnings revisions lower."  Naughton 1.  And after those Statements, more third-party analysts understood the Canadian business's inventory problem.  Christopher Horvers, et al., *Target Corporation: The Sum of All Fears; Reducing Estimates 10%; Reiterate Neutral*, J.P. Morgan N. Am. Equity Res. 1 (Aug. 22, 2013), Dkt. No. 75 (Ex. 20); *Target's Results Show The Toll Of A Weak U.S. Economy And Canadian Expansion*, Trefis (Aug. 22, 2013), Dkt. No. 75 (Ex. 21).

Target's downplaying of its problems could not have been material to the alleged securities fraud.  Qualitative praise and confident feelings are soft.  Likewise, "primarily" softens highlighting seasonal goods.  And, contradicting the allegedly misleading inference, Target disclosed financial and inventory problems.  The media confirmed the Canadian business's inventory problem and how that problem hurt Target's brand in Canada.  That problem's technological root was disclosed by Target and confirmed by analysts.  For the reasonable investor, more detail about that root could not have

significantly altered the total mix of available information.

**Statements after October 24, 2013**

By October 24, third-party analysts had disclosed and confirmed more detail about the technological root of Target's problems in Canada.  Paul Trussell & Matt Siler, *Round 2: Canada Checks & Pricing Study - Same Issues Persist*, Deutsche Bank Markets Res. 1 (Oct. 1, 2013) ("[S]everal bugs in the company's automatic replenishment system led to it being shut down forcing employees to manually re-order basic goods."), Dkt. No. 75 (Ex. 22); Wayne Hood, et al., Target: Comments Ahead of Analyst Meeting and Following Store Walk With EVP Merchandising, BMO Capital Markets Broadline Retail 15 (Oct. 24, 2013) ("[The] systems have not been properly speaking to each other.  In other words, there is inventory, but it is not in the right place and is not moving properly."), Dkt. No. 23 (Ex. 23).  Later accused Statements could not have been material to the alleged securities fraud because, for the reasonable investor, even more detail could not have significantly altered the total mix of available information.

**Conclusion**

The accused Statements cannot meet the materiality standard for securities fraud. IT IS SO ORDERED THAT Carpenters' Pension Fund of Illinois's Motion for reconsideration [Dkt. No. 105] is **DENIED**.

Dated:  March 19, 2018    s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge